**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Priority   | ____ |
|------------|------|
| Send       | ____ |
| Enter      | ____ |
| Closed     | ____ |
| JS-5/JS-6  | ____ |
| Scan Only  | ____ |

CASE NO.: <u>SA CV 12-07189 SJO (AGRx)</u>  DATE: <u>December 26, 2012</u>
<u>Applies to All Related Cases</u>

TITLE: <u>The Tawnsaura Group, LLC v. Maximum Human Performance, LLC</u>
<u>LEAD CASE - Applies to All Coordinated Actions</u>

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Cruz                              Not Present
Courtroom Clerk                          Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**       **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                              Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** [Docket No. 27]

A number of Defendants[1] ("Defendants") have joined in a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"), filed November 19, 2012. The Motion seeks dismissal on the grounds that the patents-in-suit claim matter that is not eligible for patent protection under 35 U.S.C. § 101. Plaintiff The Tawnsaura Group, LLC ("Plaintiff" or "Tawnsaura") filed an Opposition ("Opposition") on December 6, 2012. Defendants filed a Reply ("Reply") on December 17, 2012. Acting on the stipulation for a briefing schedule submitted by the parties on November 11, 2012, the Court vacated the previously set hearing date. The Court

---

[1] The Defendants who have joined in the Motion are: Maximum Human Performance LLC, Physicians Formulas, Inc., Gaspari Nutrition Inc., Beautyfit Inc., Labrada Bodybuilding Nutrition, Inc., BNC Nutrition LLC, Force Factor LLC, Irwin Naturals, Kingfisher Media LLC, Nutricology, Inc., Puritan's Pride, Inc., Serious Nutrition Solutions LLC, Vitacost.com, Inc., NOW Foods Inc., Montiff Inc., Swanson Health Products Inc., Solaray Inc., Twinlab Corporation, Ultimate Nutrition Products Inc., Universal Nutrition, Inc., Musclepharm Corporation, Infinite Labs, LLC, All American Pharmaceutical & Natural Foods Corporation, Driven Sports, Inc., Beverly International Nutrition, LLC, Betancourt Nutrition, Inc., Advanced Nutraceutical Engineers and Marketers, LLC, Guthy Renker LLC, Get Fit Nutrition, Gamma Enterprises LLC, Fahrenheit Group Corporation, Isatori, Inc., Isatori Technologies, Inc., Isatori Technologies, LLC, ABB Performance, LLC, NBTY Inc., Optimum Nutrition, Inc., Bio-Engineered Supplements and Nutrition, Inc., CytoSport, Inc., Sechel Holdings, Inc., World Health Products, LLC, ISS Research, LLC, Anabol Naturals, Exclusive Nutrition Products, Inc., Vital Pharmaceuticals, Inc., and Evogen, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>SA CV 12-07189 SJO (AGRx)</u><br><u>Applies to All Related Cases</u> | DATE: <u>December 26, 2012</u> |

finds this matter suitable for disposition without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court DENIES the Motion.

I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Beginning on August 21, 2012, Tawnsaura filed a series of complaints in this District alleging infringement of United States Patents 5,874,471 ("the '471 Patent") and 6,028,107 ("the '107 Patent").  All such cases have been related and coordinated. (Order Relating, Transferring, Coordinating and Staying Cases, Nov. 29, 2012, ECF No. 12.)  Both patents are titled "Orthomolecular Medical Use of L-Citrulline For Vasoprotection, Relaxative Smooth Muscle Tone and Cell Protection."  While it issued earlier, the '471 Patent is a continuation-in-part of the application that resulted in the '107 Patent.  The Abstract of the '471 Patent describes the invention as follows:

> This invention is a novel method in orthomolecular health to sustain favorable amounts of L-arginine efficiently within the human body for preservation of good health and amelioration of various disease states.  The method provides administration of sizable amounts of L-citrulline as precursor substance for bioconversion to L-arginine in order to maintain greater blood plasma concentrations of L-arginine as potential substrate for various metabolic functions . . . .

The '107 Patent's abstract contains the same language, but substitutes "orthomolecular medicine" for "orthomolecular health."  The patents state that "[o]rthomolecular medicine is the term coined by Linus Pauling for the preservation of good health and the treatment of disease by varying the concentrations in the body of substances that are normally present in the body and are required for optimal or better health."  ('107 Patent 1:19-23.)

The '471 patent has a single independent claim and 29 dependent claims.  The '107 patent has a single independent claim and 18 dependent claims.  The independent claims are as follows:

| '471 Patent claim 1 | '107 Patent claim 1 |
|---|---|
| A method of improving the health of a subject to increase the plasma level of arginine in the subject to a level from a low or normal fasting level to a level which is up to three times an average overnight fasting level, comprising orally administering a substance selected from the group consisting of L-citrulline and the calcium salt of L-citrulline. | A method of improving the health of a subject to increase the plasma concentration of arginine in the subject to a level from a low or normal fasting concentration to a level which is up to three times an average overnight fasting arginine level of about 90 µmole per liter of plasma, comprising orally administering L-citrulline as precursor substance. |

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   <u>SA CV 12-07189 SJO (AGRx)</u>
<u>Applies to All Related Cases</u>

DATE: <u>December 26, 2012</u>


The dependent claims are further limited to use with various health states or particular modes of administration, including particular dosing, particular product form, and the presence or absence of other ingredients.

II.     <u>DISCUSSION</u>

    A.     <u>Legal Standard</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Patent eligibility under 35 U.S.C. § 101 can be decided at the motion to dismiss stage. *Ultramercial, LLC v. Hulu, LLC*, 2010 U.S. Dist. LEXIS 93453 (C.D. Cal. Aug. 13, 2010), *rev'd on other grounds*, 657 F.3d 1323 (Fed. Cir. 2011). Notwithstanding the broad phrasing of patentable subject matter given in 35 U.S.C. § 101 ("any new and useful process"), there are three categories that are not patentable: "laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).

    B.     <u>Application</u>

Defendants argue that the Patents claim the use of "a naturally occurring substance that people have been consuming for thousands of years," simply relying on the body's "natural, biological response" to ingesting that substance, and "observing alleged, unspecified improved health." (Mot. 1.) Defendants note that the patents state that "L-citrulline is a naturally occurring amino acid present in melon juices and as a protein constituent in food plants of the Cucurbiaceae family, such as melons, cucumbers, squash and pumpkin," and that the human body naturally converts L-citrulline into L-arginine. (Mot. 3-4 (quoting '471 Patent 11:53-56).) Thus, Defendants argue that "anyone enjoying pumpkin pie at Thanksgiving or some watermelon on the Fourth of July" would be practicing the claimed invention. (Mot. 4.)

Defendants argue that "[i]t is apparent that Plaintiff believes its patents cover any product that includes any form of L-citrulline intended to be ingested in any dosage." (Mot. 2.) But, it is not clear that the claims are in fact so broad. Certainly, the dependent claims requiring particular dosages or forms are not. Nor, necessarily, are the independent claims requiring a dosage that increases arginine levels to above a "normal level." The specification notes that the "invention relates to the peroral administration of L-citrulline to humans in daily amounts **greater than** that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>SA CV 12-07189 SJO (AGRx)</u>
<u>Applies to All Related Cases</u>

DATE: <u>December 26, 2012</u>

ingested usually by dietary means as constituents of food proteins and in food juices." (Opp'n 12 (quoting '471 Patent 11:38-42).)[2] Defendants respond that the statement is qualified—"greater than that ingested **usually** by dietary means"—such that the claims could overlap with the prior art dietary ingestion of L-Citrulline in amounts greater than "usual." (Reply 4.) Defendants' arguments raise scientific issues that the Court requires evidence, perhaps including expert testimony, to resolve.

There is no question that the claimed methods rely in part on the human body's natural response to L-citrulline. But that is the case with any medication. The question is whether the challenged claims encompass nothing but a natural phenomena, or one merely coupled with "well-understood, routine, conventional activity already engaged in by the scientific community." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012). Defendants argue that "[t]o the extent the alleged invention is simply the oral administration of L-Citrulline . . . it is not patentable" because *Mayo* invalidated an "administering" claim. (Reply 5-6.) But in *Mayo*, the drug was previously in use for the precise purpose recited in the claim. *Mayo*, 132 S. Ct. at 1295. It is not clear that is the case here. Defendants cite to the disclosure in the '471 Patent's specification that at the time of the invention, "[c]itrulline malate (a salt of citrulline) [was] provided in slight amounts in a few European proprietary preparations for ill-defined or vague purposes in aesthenia (weakness) or as a tonic." (Reply 8 (quoting '471 Patent 5:40-43).) But, it is not clear whether those "slight amounts" are greater than normal dietary amounts, and the question cannot be resolved on a motion to dismiss.

It is also possible that, as Plaintiffs argue, claim construction will be required to resolve the patentable subject matter issue. (Opp'n 1, 9.) For example, claim 1 of each patent requires increasing a subject's plasma concentration of arginine from a low or normal fasting concentration. Defendants contend that those claims would be infringed "every time a person eats watermelon." (Mot. 10.) Defendants likewise argue that the independent claims only require increasing arginine to a level "**up to** three times an average overnight fasting level." (Reply 5.) That suggests that a fairly small increase could infringe the claims, but again, it could depend on what "normal" means.

---

[2] The Court disregards Plaintiff's factual argument about how many pounds of watermelon it would take to infringe the specific claims that require ingestion of a particular amount of L-Citrulline. (Opp'n 12.) The arguments are not supported by evidence, and indeed could not be when considering a motion to dismiss. Likewise, Plaintiff goes beyond the pleadings in arguing that the L-Citrulline in Defendants' products is synthetic, rather than natural. (Opp'n 10-11.) Even if the Court could consider that factual argument at this point, the claims, at least on their face, do not require synthetic L-Citrulline, so it is unclear what Defendants' products have to do with the subject matter eligibility of the claims.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>SA CV 12-07189 SJO (AGRx)</u>
<u>Applies to All Related Cases</u>

DATE: <u>December 26, 2012</u>


At this stage, the Court cannot determine whether or not the claims at issue are "an **application** of a law of nature or mathematical formula to a known structure or process," "which may well be deserving of patent protection." *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010).  The patents might, or might not, claim a new way of using an existing substance.  *See Mayo*, 132 S. Ct. at 1302.  At this stage, the Court cannot determine whether the patents' claimed use of L-Citrulline was "routine" or "conventional."  *Id.* at 1298.

III.    <u>RULING</u>

The Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.