Tyler J. Woods, Bar No. 232464
twoods@trialnewport.com
Richard H. Hikida, Bar No. 196149
rhikida@trialnewport.com
Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
NEWPORT TRIAL GROUP, APC
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff
THE TAWNSAURA GROUP, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE TAWNSAURA GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIMUM HUMAN PERFORMANCE, LLC,<br><br>Defendant. | Master Case No: 2:12cv07189 SJO(AGRx) (related/coordinated to ALL CASES)<br><br>Case Nos. CV-12-01397-SJO-AGR; CV-12-01472-SJO-AGR; CV-13-04474-SJO-AGR<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DECLARE THIS CASE AS EXCEPTIONAL AND TO AWARD ATTORNEYS' FEES**<br><br>[Declarations of Gavin Bogle, Steven R. Lazar and Tyler J. Woods filed concurrently herewith; [Proposed] Order lodged concurrently herewith]<br><br>Date: September 2, 2014<br>Time: 10:00 a.m.<br>Judge: Hon. S. James Otero<br>Courtroom: 1, Spring Street |
| and RELATED/COORDINATED CASES | |

# TABLE OF CONTENTS


Page(s)

I. INTRODUCTION .... 1

II. ARGUMENT .... 1

A. Legal Standard .... 1

1. The Supreme Court Has Imposed a Holistic, Equitable Approach to Deciding Fee Motions in Patent Cases. .... 1

2. The Standards for "Objectively Baseless Conduct" and "Subjective Bad Faith" are Both Exceptionally High. .... 3

3. *Octane Fitness* Is Not a "Rebuke" to So-Called "Patent Troll" Litigation. .... 3

B. The Instant Action Does Not Stand Out From Others With Respect to the Substantive Strength of Plaintiff's Litigating Position. .... 4

1. Plaintiff's Litigating Position Was Strong Regarding the Governing Law. .... 4

2. The Facts of the Case Do Not Stand Out. .... 9

3. Plaintiff's Coordinated Cases Against the Moving Defendants Were Litigated in a Reasonable Manner. .... 22

C. Defendants Have Failed to Demonstrate that the Amount of Requested Attorney's Fees Is Reasonable. .... 23

1. Defendants Have Failed to Allocate Their Attorneys' Fees Allegedly Incurred Unnecessarily by Plaintiff's Conduct. .... 23

2. Defendants Concede That They Are Not Entitled to Recover Any Attorneys' Fees Incurred Prior to the Court's Issuance of Its Claim Construction Order on August 6, 2013. .... 24

3. Defendants' Counsels' Hourly Rates Are Unsubstantiated as Reasonable. .......... 24

4. Ultimate Nutrition's Fee Award, If Any, Should Be Reduced Because Of Its Unethical Conduct. .......... 25

III. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. 1989) .......... 5

*Bianco v. Globus Medical, Inc.*, 2014 WL 1904228 (E.D. Tex. May 12, 2014) .......... 4, 5

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005) .......... 2, 22

*In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr. S.D. Cal. 1984) .......... 25

*Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) .......... 23, 24

*CreAgri, Inc. v. Pinnaclife, Inc.*, Case No. 11-CV-6635-LHK, 2014 WL 2508386 (N.D. Cal. June 3, 2014) .......... *passim*

*Digitech Image Technologies, LLC v. Newegg, Inc.*, 2013 WL 5604283 (C.D. Cal. Oct. 11, 2013) .......... 22

*EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, Case No. 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014) .......... 3, 4, 5, 6

*EON Corp. v. FLO TV Inc.*, 2014 WL 2196418 (D. Del. May 27, 2014) .......... 4, 5

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011) .......... 3

*in IPVX Patent Holdings, Inc. v. Voxernet, LLC*, 2014 WL 2772297 (N.D. Cal. June 18, 2014) .......... 22

*J.M. v. Capistrano Unified Sch. Dist.*, 2011 WL 1326905 (C.D. Cal. Mar. 31, 2011) .......... 25

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943 (Fed. Cir. 2010) .......... 5

*Meyer Intellectual Properties Ltd. v. Bodum USA, Inc.*, 2014 WL 3724797 (N.D. Ill. July 28, 2014) .......... 3, 10, 14

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .......... 21

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) .......... *passim*

*Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539 (Fed. Cir. 2011) .......... 3, 10

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) .......... 18, 19, 20

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) .......... 5

*Sentex Sys., Inc. v. Elite Access Sys., Inc.*, 250 F.3d 756 (Fed. Cir. 2000) .......... 7

*Shire LLC v. Amneal Pharm., LLC*, 2014 WL 2861430 (D.N.J. June 23, 2014) .......... 3

*Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir. 1997) .......... 12

*View Eng'g, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000) .......... 20

*Zuniga v. United Can Co.*, 812 F.2d 443 (9th Cir. 1987) .......... 11, 12

**Federal Statutes**

35 U.S.C. § 285 .......... *passim*

Fed. Rules of Civ. Pro. 11 .......... 17

Fed. Rules of Civ. Pro. 1-120 .......... 12

Fed. Rules of Civ. Pro. 3-310 .......... 12

Fed. Rules of Civ. Pro. 3-310(C)(2)-(3) .......... 12

Fed. Rules of Civ. Pro. 3-310(D) .......... 12

Fed. Rules of Civ. Pro. 11 .......... 11, 12, 19

Fed. Rules of Civ. Pro. 11(b)(1) .......... 11

Fed. Rules of Civ. Pro. 408 .......... 12

Fed. Rules of Prof. Conduct 1-120 .......... 12

Fed. Rules of Prof. Conduct 3-310 .......... 11

**California Statutes**

Cal. Civ. Code § 1750 *et seq*. .......... 11

Cal. Bus. & Prof. Code § 6000 *et seq*. .......... 12

Cal. Bus. & Prof. Code § 17200 *et seq*.. .......... 11

Cal. Bus. & Prof. Code § 17500 *et seq*. .......... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

# I. INTRODUCTION

Plaintiff The Tawnsaura Group, LLC ("Plaintiff" or "Tawnsaura") opposes Defendants' "Motion to Declare This Case as Exceptional and to Award Attorneys' Fees" ("Motion") on several grounds. **First**, the Motion fails to provide any legal analysis to demonstrate that this case is exceptional under 35 U.S.C. § 285. **Second**, the Motion fails to establish any objectively baseless conduct, subjective bad faith, or any other indicia of wrongdoing such as litigation misconduct by Plaintiff or Plaintiff's counsel. **Third**, Defendant Ultimate Nutrition, Inc. ("Ultimate") betrayed its true motives by offering not to file the instant Motion if Plaintiff's counsel would dismiss three ***other*** pending lawsuits filed by ***other*** Plaintiffs against Ultimate – which is clearly unethical. For all of these reasons, the Motion should be denied.

# II. ARGUMENT

## A. Legal Standard

### 1. The Supreme Court Has Imposed a Holistic, Equitable Approach to Deciding Fee Motions in Patent Cases.

"The Court in *exceptional cases* may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis added). A district court's discretionary power to award attorney's fees in patent litigation "is reserved for 'exceptional' cases." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Based upon the ordinary, contemporary, and common meaning of the term "exceptional" codified in the discretionary fee-shifting provision in the Patent Act,[1] the Supreme Court recently held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "District courts may determine whether a

[1] The Supreme Court noted, "In 1952, when Congress used the word in § 285 (and today, for that matter), '[e]xceptional' meant 'uncommon,' 'rare,' or 'not ordinary.'" *Octane Fitness*, 134 S. Ct. at 1756 (citations omitted).

case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* The Supreme Court also held that "[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations' [the Supreme Court] has identified'", and identified a non-exclusive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

In *Octane Fitness*, the Supreme Court of the United States held that the framework established by the Federal Circuit in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), was "unduly rigid" and "impermissibly encumbers the statutory grant of discretion to district courts." 134 S. Ct. at 1755. Instead, the Supreme Court explained that "a district court may award fees in the <u>*rare*</u> case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1756-57 (emphasis added).

The Supreme Court also disagreed with the scope of the second category of cases in which the Federal Circuit allowed fee awards whereby the Federal Circuit required a determination by the district court that <u>*both*</u> the litigation is objectiveless baseless and that the plaintiff brought the case in subjective bad faith. *Octane Fitness*, 134 S. Ct. at 1757. The Supreme Court held that "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* Finally, the Supreme Court rejected the Federal Circuit's "clear and convincing evidence" standard, and held that a preponderance of the evidence standard applied. *Id.* at 1758; *CreAgri, Inc. v. Pinnaclife, Inc.*, Case No. 11-CV-6635-LHK, 2014 WL 2508386, *5 (N.D. Cal. June 3, 2014) (noting that "entitlement to fees under § 285 need only be shown by a preponderance of the

evidence”).

**2. The Standards for “Objectively Baseless Conduct” and “Subjective Bad Faith” are Both Exceptionally High.**

In *Octane Fitness*, the Supreme Court noted that in *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011), the Federal Circuit held that “litigation is objectively baseless ***only*** if it is so unreasonable that no reasonable litigant could believe it would succeed.’” 134 S. Ct. at 1754 (quoting *iLOR*, 631 F.3d at 1378) (emphasis added). Despite being expressly addressed in *Octane Fitness*, Defendants failed to recite the Federal Circuit’s analysis of what constitutes subjective bad faith conduct—which is “unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings.” *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011).

**3. *Octane Fitness* Is Not a “Rebuke” to So-Called “Patent Troll” Litigation.**

Defendants curiously argue that *Octane Fitness* is “widely considered a strong rebuke to ‘patent troll’ litigation.” Dkt. No. 292 (“Motion”) at 4:27-5:1. In reality, *Octane Fitness* did not involve a so-called “patent troll”; the patentee whose litigation conduct was at issue in *Octane Fitness* was described by the Supreme Court as “a major manufacturer of exercise equipment.” 134 S. Ct. at 1754. Despite defendants’ overheated rhetoric, the actual holding in *Octane Fitness* is that fees can be granted in the “rare” patent case in which “a party’s unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so ‘exceptional’ as to justify an award of fees.” *Id.* at 1756-57.

Likewise, Defendants have ignored a variety of post-*Octane Fitness* cases that have denied nearly identical “exceptional case” fee-shifting motions as the one presented here.[2] Post-*Octane Fitness* courts have recognized that “application of the

[2] *See, e.g.*, *Meyer Intellectual Properties Ltd. v. Bodum USA, Inc.*, 2014 WL 3724797, at *2-*3 (N.D. Ill. July 28, 2014); *EON Corp.*, 2014 WL 3726170 at *4-*6; *Shire LLC v. Amneal Pharm., LLC*, 2014 WL 2861430, at *8 (D.N.J. June 23, 2014); *CreAgri*,

Continued on the next page

American Rule remains the well-established presumption even in patent cases." *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, Case No. 12-CV-01011-JST, 2014 WL 3726170, *5 (N.D. Cal. July 25, 2014). In *EON Corp.*, the court noted that it "will not depart from [the American rule] lightly." *Id.*

### B. The Instant Action Does Not Stand Out From Others With Respect to the Substantive Strength of Plaintiff's Litigating Position.

Based upon the factors identified by the Supreme Court, this action simply cannot be fairly described as the "rare" case that would justify an award of attorneys' fees.

#### 1. Plaintiff's Litigating Position Was Strong Regarding the Governing Law.

##### a) Plaintiff's Case Survived Despite Several Attempts by Defendants to Dismiss the Case

Defendants have failed to show that no reasonable litigant could believe that Plaintiff's position would succeed. As explained above, the Federal Circuit has held that "litigation is objectively baseless only if it is so unreasonable that no reasonable litigant could believe it would succeed.'" *Octane Fitness*, 134 S. Ct. at 1754 (quoting *iLOR*, 631 F.3d at 1378). Despite being expressly addressed in *Octane Fitness*, Defendants failed to recite the Federal Circuit's analysis of its definition of what constitutes objectively baseless conduct, which speaks volumes.

Here, Plaintiff beat back several attempts by Defendants to have the case dismissed. First, Plaintiff's infringement claims withstood Defendants' motion to dismiss asserting failure to state a claim for relief. *See* Dkt. No. 74. Second, Plaintiff successfully defeated an earlier motion for summary judgment attacking the validity of the patents-in-suit. *See* Dkt. Nos. 20, 133, 136 and 141. The fact that the Court denied the first motion for summary judgment is an indication that the claims were not

---

Continued from the previous page
2014 WL 2508386 at *14; *EON Corp. v. FLO TV Inc.*, 2014 WL 2196418, at *2-*3 (D. Del. May 27, 2014); *Bianco v. Globus Medical, Inc.*, 2014 WL 1904228, at *2 (E.D. Tex. May 12, 2014).

frivolous. *See Bianco*, 2014 WL 1904228, at *2; *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("[A] party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial."); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010) ("[T]he district court's denial of summary judgment of noninfringement reflects the belief that it was reasonable" for the plaintiff to have prosecuted its claim); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("[W]e find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts.").

With respect to Defendants' Motion for Summary Judgment filed on December 3, 2013, the issue of invalidity of the patents-in-suit was a close call involving very nuanced issues—enough that the Court required supplemental briefing. *See* Dkt. No. 242. The fact that the Court ordered supplemental briefing demonstrates that the decision was not an easy one. *See, e.g.*, *FLO TV Inc.*, 2014 WL 2196418 at *2 (noting that a decision in a patent infringement case was "not an easy one" as demonstrated by the fact that the court heard oral argument, scheduled a supplemental evidentiary hearing, and ordered post-trial briefing on the issue).

This case is analogous to *EON Corp.*, 2014 WL 3726170. In that case, the prevailing defendants moved for attorneys' fees, in part, under § 285 of the Patent Act after prevailing on their motion for summary judgment for non-infringement, which followed the court's claim construction order. The district court denied such motion. Although the district court agreed with the defendants that the plaintiff's infringement contentions "lack merit," the district court noted that "that by itself is not enough to render a case 'extraordinary.'" *EON Corp.*, 2014 WL 3726170 at *5. The district court also noted, "Patent litigants often disagree about whether a plaintiff has viable infringement contentions after an adverse claim construction, and one side is usually

wrong." *Id.* Significantly, the district court noted that even though the plaintiff's post-claim construction infringement argument, which the district court rejected, was in the court's view, "quite stretched," "such that few patentees would pursue it," "the Court cannot quite conclude that *no* reasonable patentee could see an opening in the Court's claim construction order through which the argument could be squeezed." *Id.* (emphasis in original).

The court's analysis in *CreAgri*, 2014 WL 2508386, is also applicable insofar as the district court in that case held that the patentee's allegation that the accused product infringed a certain claim could not be viewed as unreasonable "in light of the expert testimony that supports such an allegation." *Id.* at *11. Similarly, here, Plaintiff's expert's testimony supports Plaintiff's position and thus its position was not objectively baseless. Plaintiff consulted and obtained declarations and a report from Dr. Richard Kreider, an expert in nutrition and exercise and its role in health, disease, rehabilitation, and/or performance and a preeminent figure in the sports medicine field. Declaration of Gavin Bogle ("Bogle Decl."), ¶ 7; *see* Dkt. No. 133-9 (Kreider Declaration in support of Plaintiff's Opposition to Puritan Pride, Inc.'s Motion for Summary Judgment); Dkt. No. 140-6 (Kreider Declaration in support of Plaintiff's Claim Construction Brief); Dkt. No. 233-4 (Expert Rebuttal Report of Dr. Richard Kreider).

Finally, the court's analysis in *CreAgri* is also applicable with respect to the reasonableness of the infringement allegations insofar as the district court in that case held that even if the evidentiary burden to show infringement is on the patentee, then it would have been easy for the defendant to come forward with affirmative evidence disproving the infringement allegations. 2014 WL 2508386 at *12. Defendants' failure to come forward with evidence disproving its infringement is "certainly probative" of the question whether the defendants have established that [Plaintiff's] infringement case was objectively baseless." *Id.*

**b) <u>Plaintiff's Pursuit of the Claims After Disclosure of Prior Art and Claim Construction Was Entirely Reasonable</u>**

Defendants contend that Plaintiff should have "dismiss[ed] this Case after the Claim Construction Order" in light of the prior art Defendants disclosed to Plaintiff, namely the Callis and Awrich references. Motion at 6:21. However, Plaintiff had a good faith basis for continuing to litigate after the Court's claim construction order. *See* Declaration of Steven R. Lazar ("Lazar Decl."), ¶¶ 8-17.

*Sentex Sys., Inc. v. Elite Access Sys., Inc.*, 250 F.3d 756 (Fed. Cir. 2000), is instructive here. In *Sentex*, the plaintiff was "confronted" with prior art by a defendant, and was given "a thorough explanation from [the defendant] as to how the [prior art] had disclosed [plaintiff's] claimed invention." *Id.* at *3. The district court found that the case was exceptional because plaintiff "continued to litigate this action against [the defendant]" despite this new information. *Id.* The Federal Circuit, however, overturned this ruling, holding that the plaintiff's conduct did not "rise to the level of intentionally, recklessly, or with gross negligence filing and prosecuting a baseless infringement action." *Id.* The Federal Circuit held that the defendant's analysis of the prior art "d[id] not amount to an objective review of the evidence or a determination that the patent is invalid." *Id.* Further, the court held that where a plaintiff "disagreed with [the defendant] as to the effect of the disclosed technology, contending that the articles concerned technology that . . . was not the same technology described in the patent," "[c]ontinuing to litigate in this context does not indicate a level of bad faith necessary to characterize the case as exceptional." *Id.* The Federal Circuit held that "even though the district court and this court ultimately ruled against [the plaintiff]" an exceptional case "is not established simply because [the plaintiff] lost on the merits." *Id.*

The facts of this case mirror those in *Sentex*. Soon after Defendants identified the Callis and Awrich prior art on or around March 7, 2013 (Motion at 6:1-2), Plaintiff's counsel, Mr. Lazar and Dr. Kreider analyzed the disclosures in these prior art references and compared them to the patents-in-suit. *See* Bogle Decl., ¶ 9; Lazar Decl., ¶¶ 5-7, 13-17. Based on Plaintiff's counsel's, Mr. Lazar's and Dr. Kreider's analysis, it was Plaintiff's conclusion that these references did not invalidate the patents-in-suit for not

only the reasons laid out in Plaintiff's Opposition to the Motion for Summary Judgment, but also those reasons set forth in Plaintiff's June 10, 2013 Response to Vital Pharmaceutical's First Set of Interrogatories. Bogle Decl., ¶ 9, Ex. MM. Plaintiff believed that Callis and Awrich was cumulative of prior art already disclosed to the U.S. Patent & Trademark Office ("USPTO") during prosecution of the patents-in-suit, did not expressly or inherently disclose all of the limitations of the claims asserted, and did not anticipate the claims asserted. *Id.*, ¶ 9 (citing Dkt. No. 233 at 4-12); *see also* Bogle Decl., ¶ 9; Lazar Decl., ¶¶ 5-7, 13-17.

The Callis and Awrich prior art was further analyzed by Plaintiff as part of Plaintiff's decision to file a request for *ex parte* re-examination with the USPTO in August 2013 following the Court's Claim Construction Order, wherein it determined that the term "l-citrulline" within the '107 Patent included the term "citrulline malate." Bogle Decl., ¶ 10 (citing Dkt. No. 177 at 14-16). This analysis included consultation with Mr. Lazar. *See id.*; *see also* Lazar Decl., ¶¶ 9-11. Based on Plaintiff's analysis, the '107 Patent would need to be amended to clarify the limitations of the claimed invention. *See* Bogle Decl., ¶ 10; Lazar Decl., ¶ 11. The amended claims would demonstrate that Callis and Awrich, as well as other prior art cited by Defendants, failed to teach, disclose or suggest the methods claimed by the '107 Patent. *See* Bogle Decl., ¶ 10; Lazar Decl., ¶¶ 12-17. However, even with the re-examination, it was Plaintiff's understanding that "neither the re-examination request, nor the proposed amended claims, would have any effect on the validity of the '107 Patent as construed by the Court, and particularly several of the dependent claims of the '107 Patent." Bogle Decl., ¶ 10.

"Tawnsaura had several reasons for believing that the asserted claims of the '107 Patent were valid in spite of the Callis prior art." Bogle Decl., ¶ 13 (citing Dkt. No. 233 at 4-12). "Tawnsaura's expert's analysis confirmed these reasons." *Id.* (citing Dkt. No. 233 at 4-12); *see* Lazar Decl., ¶¶ 7, 12. "Callis, as well as other prior art cited by Defendants, only disclosed the use of citrulline malate and citrulline

monohydrochloride, and do not teach or suggest the use of L-citrulline or its calcium salt, and does not disclose the limitations claimed in the patent." Lazar Decl., ¶ 12. "Further, even in combination, one skilled in the art would not have reasonable motivation to substitute free L-citrulline for the citrulline malate disclosed in the prior art references." *Id.* Plaintiff's expert also found that the '107 Patent was valid in the face of the Awrich prior art. *See id.*, ¶¶ 12-17. "The Awrich prior art relates specifically to the treatment of a single patient suffering from hyperdibasicaminoaciduria ('LPI'), a rare genetic disorder, and provides no teaching or suggestion that administration of free L-citrulline would improve the health of subjects other than those who suffer from LPI." *Id.*, ¶ 13. "Given the close metabolic relationship of citrulline and arginine, one skilled in the art would not reasonably be able to extrapolate from the effect of citrulline on arginine levels in a single LPI patient to predict the effects of citrulline on arginine levels in a normal subject, in whom arginine and citrulline would be processed normally." *Id.*; *see also id.*, ¶¶ 14-17. Moreover, Plaintiff believed "the disclosure of Awrich is cumulative to the prior art that was already disclosed to the USPTO." *Id.*, ¶ 17.

"The Court, while disagreeing with Tawnsaura's arguments, did not find that such arguments were objectively baseless, and considered and addressed each of Tawnsaura's arguments in great detail." Bogle Decl., ¶ 13 (citing Dkt. No. 281 at 8-11). "In fact, in its ruling, the Court devoted five pages of legal analysis to the issue of the '107 Patent's validity, which is consistent with how complex the underlying legal issues were, underscored by the fact that the Court only rendered its written ruling over half-a-year following the closure of initial briefing, and five months after the submission of supplementary briefing requested by the Court." *Id.* In sum, Plaintiff's continued pursuit of its claims against Defendants was reasonable.

**2. <u>The Facts of the Case Do Not Stand Out.</u>**

**a) <u>Defendants Failed to Assert Any Litigation Misconduct by Plaintiff or Its Attorneys.</u>**

Defendants implicitly concede that there was absolutely no litigation misconduct by Plaintiff or its attorneys. *See Old Reliable Wholesale*, 635 F.3d at 549 (defining litigation misconduct as involving "unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings"). Notably, there the instant Motion is wholly silent as to this factor. Additionally, Defendants conveniently ignore that the Court lauded the parties for their cooperation and professionalism. *See* Declaration of Tyler J. Woods Decl. ("Woods Decl."), ¶ 16, Ex. L at 6:4-6 ("Let me take a moment to complement [sic] counsel in terms of the cooperation that has occurred since the litigation has been filed."); *see also* Bogle Decl., ¶ 14. In fact, at the Motion for Summary Judgment hearing on June 13, 2014, the Court specifically thanked the parties for their professionalism:

> "I want to compliment the lawyers for both sides. You made it easier on the Court by cooperating as you did and how we structure the litigation time line in the management of the case, and it was actually a pleasure with the lawyers. Thank you very much."

Woods Decl., ¶ 20, Ex. P at P at 43:8-12. Thus, the fact that none of Plaintiff's litigation conduct was unprofessional or unethical—and was in fact praised by the Court—weighs strongly against a finding of exceptionality. *Meyer Intellectual Properties*, 2014 WL 3724797 at *3 ("none of [plaintiff's] litigation conduct was unprofessional or unethical so as to warrant a finding of an exceptional case").

**b) <u>Ultimate Nutrition Has Engaged in Litigation Misconduct By Violating California's Rules of Professional Conduct.</u>**

The Supreme Court's holding in *Octane Fitness* encourages district courts to exercise their "equitable discretion" in deciding fee motions based on the "totality of the circumstances." 134 S. Ct. at 1756. One such circumstance relevant here is that Defendant Ultimate Nutrition filed this Motion for an "improper purpose"[3] within the

[3] The standard governing the "improper purpose" inquiry is objective. *G.C. and K.B. Investments, Inc.*, 326 F.3d 1096, 1109 (9th Cir. 2003). "The standard is reasonableness. The 'reasonable man' against which conduct is tested is a competent

Continued on the next page

meaning of Rule 11(b)(1): namely, to leverage the threat of this Motion to obtain an improper advantage in three unrelated cases involving *three different plaintiffs* represented by Plaintiff's counsel.

Specifically, before filing this Motion, Ultimate Nutrition's counsel wrote that "Ultimate Nutrition would agree to the walk-away proposal only if Newport Trial Group agrees to dismiss with prejudice the Harcol, Thermolife, and Smith cases against Ultimate Nutrition." Woods Decl. ¶ 5, Ex. C. In other words, Mr. Kinkade offered to "horse trade" the instant Motion to leverage the dismissal of three other lawsuits brought by three different plaintiffs, none of whom have anything to do with Tawnsaura.[4] This correspondence betrays the true motivation behind this Motion: to gain an illicit advantage in other lawsuits involving other parties.

Ultimate's position is a per se violation of California's ethical rules. Ultimate's proposal placed Plaintiff's interests in direct conflict with the interests of Harcol, ThermoLife, and Smith, all of whom were represented by NTG. In order for Plaintiff to accept Mr. Kinkade's offer on behalf of his client, Ultimate, to avoid filing his motion for attorneys' fees under § 285, Ultimate required that NTG cause the dismissal of the pending cases of Harcol, Thermolife, and Smith against Ultimate, inducing NTG to violate Rule 3-310 of the Rules of Professional Conduct.

Rule 3-310 of the California Rules of Professional Conduct state that, "A member shall not, without the informed written consent of each client: . . . (2) Accept or continue representation of more than one client in a matter in which the interests of the

---

Continued from the previous page

attorney admitted to practice before the district court." *Id.* Attorneys cannot 'avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987).

[4] In particular, Mr. Kinkade sought the dismissal of patent infringement actions filed against Ultimate by Harcol Research, LLC in the United States District Court for the Eastern District of Texas, Case No. 2:13-cv-730, and by Thermolife International LLC in the United States District Court for the Southern District of California, Case No. 13-CV-00914 JLS (MDD). Mr. Kinkade also sought the dismissal of a putative consumer class action filed by Nick Smith, an individual plaintiff, in the Los Angeles County Superior Court against Ultimate in Case No. BC537628, alleging violations of the Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, 17500 *et seq.*; Cal. Civ. Code § 1750 *et seq.*

clients actually conflict; or (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." Rule 3-310(C)(2)-(3). Rule 3-310 also states, "A Member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client." Rule 3-310(D). Further, Rule 1-120 states, "A member shall not knowingly assist in, solicit, or induce any violation of these rules or the State Bar Act."

It is clear that Mr. Kinkade was soliciting and/or attempting to induce a violation of Rule 1-120 of the Rules of Professional Conduct. Though Ultimate denied any wrongdoing, Ultimate cannot "'avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Zuniga*, 812 F.2d at 452; *see also* Woods Decl., ¶ 13, Ex. I at 1. Ultimate's proposal placed Plaintiff's interests in direct conflict with the interests of Harcol, ThermoLife, and Smith.[5]

**c) <u>Defendants Have Failed to Identify a Single Litigation Event That Was Vexatious or Unnecessary, and Omit to Mention that Plaintiff Agreed to Defendants' Proposal to Stay Litigation to Conserve the Parties' Resources.</u>**

Defendants have failed to identify a single litigation activity including discovery that was somehow vexatious or unnecessary. Moreover, Defendants have conveniently omitted to mention that less than one month after the Court issued its Claim Construction Order, Plaintiff offered to dismiss the claims against the '107 Patent without prejudice pending the outcome of the reexamination of the '107 Patent

[5] Shortly after Ultimate communicated its improper proposal, Plaintiff's counsel pointed out that the solicitation of an ethical violation is itself a violation of Rule 11. Ultimate's Counsel responded by demanding that Plaintiff's counsel not inform the Court of the improper offer, claiming that it was "inadmissible to prove or disprove the validity or amount of a disputed claim" under Rule 408. Ultimate's counsel apparently misunderstands the reach of Rule 408; the Committee Notes to the Rule make clear that "threats made in settlement negotiations are admissible" because "Rule 408 is inapplicable when the claim is based upon some wrong that is committed <u>in the course of settlement negotiations</u>." *See Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293 (6th Cir. 1997) (emphasis added).

requested by Tawnsaura. Woods Decl., ¶ 5, Ex. C. Defendants also conveniently failed to mention that Defendants *rejected* Tawnsaura's offer to dismiss the '107 Patent claims and instead proposed to stay the action. *Id.*, ¶ 7. To conserve the parties' resources pending the outcome of Plaintiff's ex parte petition for reexamination, Plaintiff agreed to such proposal for a litigation stay of all coordinated cases. *See id.*, ¶ 8, Ex. E; Bogle Decl., ¶ 12; *see also* Dkt. No. 190. In particular, in submitting such proposal to the Court via a Joint Motion, Plaintiff and Defendants jointly argued:

> In light of the reexamination petition, and in light of the fact that both of the patents at issue in this litigation are similar, the parties believe that it is in the interests of judicial economy to stay this case pending the outcome of the USPTO's decision on Plaintiff's reexamination petition. Good cause exists for this requested stay on grounds that the stay would preserve judicial resources and avoid repeat protracted litigation on essentially the same subject matter should the '107 patent issue 18 to 24 months from now with new and/or modified claims.

Dkt. No. 190 at 2:3-10.

The Court ultimately declined to enter the proposed stay, (Dkt. No. 199), but the statements made by Defendants in support of the proposed stay is just one good example of how the record in this case reflects that Plaintiff took a reasonable litigation position in order to conserve the parties' resources, and there was no subjective bad faith on Plaintiff's part.

**d) <u>There Was No Ruling By Any Court Regarding Inequitable Conduct.</u>**

Defendants ignore that there was no ruling by the Court regarding inequitable conduct. Recognizing the frailty of their position, Defendants merely argue instead, "Inequitable conduct was an issue in this Action and one Tawnsaura was fully aware of." Motion at 8:23-24. That inequitable conduct was an issue raised by Defendants does not change the fact that no ruling was ever made by the Court regarding the existence of inequitable conduct attributed to either Plaintiff or the inventor.

**e) <u>There Is No Specific Evidence that the Inventor Knew that the Callis and Awrich Articles Were Prior Art References at the Time He Obtained the Two Patents-in-Suit.</u>**

Plaintiff acquired the patents-in-suit from the estate of Dr. William Howard Waugh on August 15, 2012 for $100,000 instead of the $30,000 figure falsely asserted by Defendants. *See* Woods Decl., ¶ 15, Ex. K at 1; *see also* Motion at 1:10-11. Plaintiff has further compensated Dr. Waugh's estate through royalty payments of 25 percent. *See* Woods Decl., Ex. K at 3.

Despite Defendants' self-serving, conclusory allegations, there is no evidence that the inventor, Dr. Waugh, intentionally withheld any documents from the USPTO. Defendants have failed to provide any specific evidence that the inventor knew and recognized that the Callis and Awrich articles were prior art references at the time that he obtained the two patents-in-suit. At best, Defendants have engaged in speculation about what the inventor, who is now deceased, knew. Indeed, the Court, in its order granting Defendants' summary judgment motion, ruled that it "has not found, by clear and convincing evidence, that Dr. Waugh intended to deceive the PTO." *See* Dkt. No. 281 at 17 n.16.

In addition, Defendants ignore the existence of a reasonable explanation for not advising the patent examiner of the two articles as a reference. *Meyer Intellectual Properties*, 2014 WL 3724797 at *2 (finding a reasonable explanation as to why the inventor did not advise the patent examiner as to a prior art reference). As discussed in Plaintiff's opposition to Defendants' second motion for summary judgment, the Callis and Awrich references were likely omitted because these references were cumulative of other references already submitted to the USPTO. *See* Dkt. No. 233 at 8-9, 16; *see also* Bogle Decl., ¶ 9; Lazar Decl., ¶ 17.

Further, Dr. Waugh was a scientist who prosecuted the patents-in-suit himself, not a sophisticated patent attorney, and his omission of documents relating to his manuscripts as well as the prior art references could have been due to his lack of

understanding of the scope of material that needed to be submitted to the UPSTO. Patent drafting, patent prosecution, and claim drafting is a complex and difficult process, even for patent professionals. Matters important to this process are unsettled and have had to be reviewed by the Supreme Court more than half a dozen times in the last few years. Dr. Waugh made mistakes which the Examiner corrected, but at the end of the day the Examiner thanked Dr. Waugh for his conduct and professionalism during the process. *See* Bogle Decl., ¶ 15, Ex. NN; *id.*, ¶ 15, Ex. OO at 3. If individuals, like Dr. Waugh, are to continue to be allowed to continue to take part in the patent system, it has to be accepted that they will make some mistakes and should not be harshly penalized for that. There is no evidence of any deliberate intention by Dr. Waugh to withhold these documents from the USPTO.

**f) <u>There Is No Admissible Evidence that Plaintiff Had Any Knowledge as to the Named Inventor's Alleged Intentional Withholding of the Callis Publication from the Patent Office at the Time that Plaintiff Commenced Any of the Actions.</u>**

Defendants argue that "Tawnsaura would have known that Waugh had intentionally withheld material information from the Patent Office." Motion at 11:13-14. "Contrary to Defendants' mischaracterization of the facts in this case, Dr. Waugh's personal files were not available to Tawnsaura prior to filing the operative complaints against Vitacost and Ultimate, and therefore any allegation that Tawnsaura knew of the alleged withholding of any documents by Dr. Waugh prior to filing suit is baseless." Bogle Decl., ¶ 8. "An e-mail received from the attorney from Dr. Waugh's estate a year after the complaints were filed and months after producing the Dr. Waugh's files to Defendants, stating that the files were given to Tawnsaura at some unspecified time 'long ago,' does not establish knowledge or possession of Dr. Waugh's files prior to Tawnsaura's filing of the operative complaints." *Id.* (citing Dkt. 292-1 at 11; *see also* Dkt. 292-5 at 2). "To the contrary, Dr. Waugh's estate did not make Dr. Waugh's files

available to Tawnsaura, or its counsel, for inspection until the end of March 2013," well after the amended complaints were filed against Defendants Ultimate and Vitacost. *Id.*

Nor do Defendants affirmatively assert that Plaintiff ***should have known*** about what Defendants characterize as the inventor's alleged intentional withholding of information from the USPTO at the outset of commencing its actions against Defendants or at some point prior to the Court's granting of summary judgment in their favor. Instead, Defendants awkwardly assert in a conclusory statement, "Thus, Tawnsaura ***would have known*** that Waugh had intentionally withheld material information from the Patent Office." Motion at 11:13-14 (emphasis added). Not surprisingly, Defendants make absolutely no representation to the Court implying that Plaintiff ***should have known*** about the inventor's alleged misconduct prior to the commencement of their coordinated actions. Indeed, none of the Defendants ever raised any issue with Plaintiff's interrogatory responses concerning the Callis prior art, which were served in May and June 2013. *See* Woods Decl., ¶¶ 18-19, Exs. N-O. Only now, when Plaintiff would not give into Defendants' improper proposal to undermine its other clients, do Defendants assert these baseless arguments. There is no admissible evidence in the record that Plaintiff had either actual knowledge or should have had knowledge regarding the inventor's alleged misconduct at that time.

Moreover, Defendants' failure to raise any inequitable conduct by Dr. Waugh in their second Motion for Summary Judgment (despite having a complete copy of Dr. Waugh's notes by September 2013) further undercuts their argument that Dr. Waugh's withholding of any documents was egregious and should have been known by Plaintiff.

#### g) Plaintiff's Pre-Filing Investigation of Defendants' Products Was Reasonable.

Pursuant to the Court's directive, on October 12, 2012, Plaintiff filed and served a First Amended Complaint for Patent Infringement on Vitacost. Bogle Decl., ¶ 4, Ex. A. On October 22, 2012, Plaintiff filed a First Amended Complaint for Patent Infringement on Ultimate. *See id.*, ¶ 4, Ex. B. On June 20, 2013, Plaintiff filed its

complaint against GNC. *See id.*, ¶ 4, Ex. C. These complaints will hereinafter be referred to as the "operative complaints." Defendants argue that Plaintiff failed to conduct a reasonable pre-suit investigation "of Defendants' products" prior to filing these operative complaints in violation of Rule 11 of the Federal Rules of Civil Procedure. Motion at 13:6-7. Defendants' argument is baseless.

Plaintiff conducted *exhaustive* investigation prior to filing the operative complaints against Defendants. Prior to filing suit against many of the Defendants in this litigation, Plaintiff obtained samples of each of the Defendants' products accused of infringement for analysis and comparison against the claims of the patents-in-suit. *See* Bogle Decl., ¶ 3. Further, prior to filing the operative complaints, Plaintiff's counsel reviewed the written descriptions and file histories of the patents-in-suit to interpret the claims of the patents-in-suit before the operative complaints were filed and ensure that Vitacost, Ultimate and GNC's products accused of infringing the patents-in-suit did in fact practice the inventions of the patents-in-suit. *See id.*, ¶ 5. In addition, Plaintiff's counsel reviewed a substantial amount of the publicly available information about Defendants' products including their websites, third-party websites, product labels, customer reviews and feedback, and other publicly available material regarding the ingredients contained in Vitacost, Ultimate and GNC's accused products, the claims Vitacost, Ultimate and GNC publicly made about the accused products, and customer's comments regarding Vitacost, Ultimate and GNC's accused products. *See id.*, ¶ 6, Exs. D-LL.

Throughout this litigation, Plaintiff's counsel relied on the opinions of third-party experts regarding the patents-in-suit, prior art and Defendants' products. Specifically, Plaintiff consulted with Steven R. Lazar, an independent consultant and registered patent attorney before the USPTO with over twenty years of intellectual property experience. *See* Bogle Decl., ¶ 7; Lazar Decl., ¶¶ 1-2. Plaintiff also worked with Dr. Richard Kreider, an expert in nutrition and exercise and its role in health, disease, rehabilitation, and/or performance and a preeminent figure in the sports medicine field.

*See* Bogle Decl., ¶ 7. Their expertise and consultations assisted Plaintiff with respect to the interpretation of the patents-in-suit, the prior art identified by the Defendants and application of the claims of the patents-in-suit to Defendants' products. *See id.*, ¶ 7; Lazar Decl., ¶¶ 3-7, 9-17. Relying on the information it had gathered, the legal analysis it had performed, and the opinions of these experts, Plaintiff had a good faith basis for pursuing its claims. Indeed, had the patents-in-suit survived the summary judgment stage, there is no question that Defendants would have been liable for infringement.

In *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), the Federal Circuit "found the following pre-filing investigation reasonable: (1) obtaining a sample of the accused product without analyzing it; (2) reviewing the defendant's advertising and labeling statements; and (3) most importantly, comparing the claims of the patent with the accused product." *CreAgri*, 2014 WL 2508386 at *8 (citing *Q-Pharma*, 360 F.3d at 1302-03). Defendants ignore that Plaintiff went beyond the requirements of *Q-Pharma* by obtaining samples of some of Defendants' accused products and chemically analyzing such samples. *See* Bogle Decl., ¶ 3. With respect to the products of the particular Defendants bringing the instant Motion, as in *Q-Pharma*, "it was not necessary to test Vitacost, Ultimate and GNC's products that were eventually accused of infringement because the product labels for each of these products stated that each product contains 'L-citrulline.'" *Id.*

Defendants contend that "Tawnsaura did not disclose in its infringement contentions or anywhere else in the case how any of the accused products met [certain] limitations." Motion at 13:23-25. This is patently false. The limitations in dispute concern: (1) "normal or good health," "increased or continuing brain or neural activities," and "increased or continuing muscular activities" (*e.g.*, claims 2, 20, and 21 of the '471 patent and claims 2, 15, and 16 of the '107 patent); (2) dosage limitations (*e.g.*, claims 26 and 27 of the '471 patent and claim 18 of the '107 patent); and (3) the limitation that citrulline be either the sole or one of two active ingredients (*e.g.*, claim 29 of the '471 patent and claim 19 of the '107 patent). *Id.* In its infringement

contentions, Plaintiff outlined how its investigation of Defendants' products demonstrated that the accused products met these specific claims.

As part of its infringement contentions against Defendants Ultimate and Vitacost, Plaintiff disclosed that Defendants' own product labeling disclosed the health of their consumers. *See* Woods Decl., ¶ 2, Ex. A at 8-11, 18-21; *id.*, ¶ 3, Ex. B at 8-10, 15-17. Further, Plaintiff disclosed how Defendant Ultimate's products met the dosage limitations of the asserted claims based on their label instructions. *See id.*, ¶ 2, Ex. A at 11-12, 21; *id.*, ¶ 3. Plaintiff also disclosed in its infringement contentions how Vitacost's products met the citrulline limitation. *See id.*, ¶ 3, Ex. B at 17. "The infringement contentions against Defendants [GNC] were not served because the case against GNC was stayed prior to the date for serving infringement contentions." *Id.*, ¶ 4. However, Plaintiff performed a thorough investigation of all publicly available information concerning GNC's products including advertising, product labeling, product website descriptions, and product reviews. *See* Bogle Decl., ¶ 6, Exs. O-LL.

As explained above, further investigation was unnecessary at that early stage of litigation. *See Q-Pharma*, 360 F.3d at 1302 ("[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter."); *see also, e.g.*, *CreAgri*, 2014 WL 2508386 at *8 (finding no Rule 11 violation where "counsel (1) reviewed the Patents–in–Suit, their written descriptions, and file histories to interpret the claims, (2) reviewed all publicly available information about the accused products . . . and (3) compared each claim element of the patents-in-suit to the accused products in light of what they had learned about them, ultimately concluding that [Defendant] infringed the Patents–in–Suit.").

Defendants assert, without any legal support, that Plaintiff was required to survey Defendants' consumers. However, Defendants' consumers did not need to be surveyed since the methods claimed by the patents-in-suit were explicitly described on the product labels and product advertisements, the labels specifically identified the direct consumers, the claimed dosages are disclosed on the accused products' labels, and the

active ingredients are disclosed on the accused products' labels. Although Defendants rely upon *View Eng'g, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000), Defendants ignore that the party that was sanctioned in that particular case "performed neither a formal nor an informal analysis of any sort." *Id.* at 986, *quoted in CreAgri*, 2014 WL 2508386 at *8; *Q-Pharma*, 360 F.3d at 1302 (noting that in *View Eng'g*, the Federal Circuit "held that sanctions were warranted because the patentee had not performed *any* claim construction analysis or an infringement analysis prior to filing its counterclaim for infringement") (emphasis added). Here, it is clear that Plaintiff performed a reasonable and thorough comparison of the accused products against the asserted claims and its pre-filing investigation does not render this case exceptional.

**h) <u>Plaintiff's Allegedly Inconsistent Positions Are Not Exceptional</u>**

Defendants make the irrelevant assertion that "Tawnsaura also has taken inconsistent positions about the scope of the asserted claims." Motion at 2:11-12. First, Defendants contend that "for infringement purposes, Tawnsaura accused products sold by Defendants allegedly containing citrulline malate." This is factually incorrect. The operative complaints at issue in this analysis are the amended complaints filed against Defendants Ultimate and Vitacost, and the complaint against GNC. Nowhere in those operative complaints are products containing accused of infringement for containing solely citrulline malate. In fact, "Plaintiff took on the incredibly expensive task of having the individual crystal structure of the accused products analyzed under the microscope for products claiming to have citrulline malate and determined that in the bottle, not just in solution, they contained L-citrulline and not just citrulline malate." Bogle Decl., ¶ 3. "Any case that did not have L-citrulline was dismissed, including some accused products that listed L-citrulline on the label but was shown through testing not to have this ingredient." *Id.* "For the remaining Defendants, even if the labels on the products stated that the products contained citrulline malate, they actually contained L-citrulline and not the citrulline malate salt." *Id.* If these Patents survived

summary judgment, Plaintiff would have proven this fact at the infringement stage.

Nonetheless, even if Plaintiff had taken opposing views on the proper construction of L-citrulline, it does not mean that "at least one of Tawnsaura's validity, infringement, and claim construction positions must have been incorrect beyond any reasonable interpretation." Motion at 13:2-4. Two differing opinions on any legal issue does not automatically render one of the opinions as "incorrect beyond any reasonable interpretation." *Id.* If that were true, any legal dispute would result in a finding of an exceptional case in favor of any prevailing party that had an opposing view to the losing party. This is simply not the proper standard. In fact, this Court construed the term to have different meanings for each of the patents-in-suit. *See* Dkt. No. 177 at 16.

If Defendants are attempting to conflate a judicial estoppel argument with an exceptional case finding, their arguments fail on their face. To establish judicial estoppel, three requirements must be met. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). "First, a party's later position must be "clearly inconsistent" with its earlier position." *Id.* at 750. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* Here, the alleged earlier position was that citrulline malate and l-citrulline were considered the same at the initial stages of this litigation. While this characterization of Plaintiff's position is incorrect as stated above, there is no evidence that the Court accepted this alleged position. *See id.* at 750-51 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations' . . . and thus poses little threat to judicial integrity"). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Here, there would be no advantage to Plaintiff to have asserted that l-citrulline and citrulline malate had the same meaning, and in fact, Plaintiff never took such a position. Thus, this is not a case requiring

judicial estoppel and more importantly, this is not a case where Plaintiff's alleged inconsistent positions demonstrate that the case was exceptional.

**i) <u>Defendants' Characterization of Plaintiff as a "Patent Troll" Does Not Justify an Award of Attorney's Fees Against Plaintiff.</u>**

Defendants' inaccurate characterization of Plaintiff as a "patent troll" does not justify an award of attorneys' fees against Plaintiff. Motion at 1:7-8. "A party seeking protection of constitutionally granted patent rights is not automatically the villain simply because it brings infringement allegations against multiple defendants." *Digitech Image Technologies, LLC v. Newegg, Inc.*, 2013 WL 5604283, at *5 (C.D. Cal. Oct. 11, 2013) (Wright, J.), *quoted in IPVX Patent Holdings, Inc. v. Voxernet, LLC*, 2014 WL 2772297, at *2 (N.D. Cal. June 18, 2014). The fact that the patentee has "has sued others" is "not indicative of bad faith." *Brooks Furniture*, 393 F.3d at 1384. Indeed, while the term "patent troll" is undefined and nebulous, it must surely be inapplicable to cases such as this one where the inventor (or his estate as here) has a significant financial interest in the outcome of litigation. Otherwise, inventors would never be allowed to work with financial entities to assert their rights.

**3. <u>Plaintiff's Coordinated Cases Against the Moving Defendants Were Litigated in a Reasonable Manner.</u>**

The foregoing analysis of the facts in the Defendants' cases demonstrates that such actions were litigated in a reasonable manner. At every turn, Plaintiff conducted this litigation in a diligent manner and in good faith. Plaintiff successfully defeated a motion to dismiss and a prior motion for summary judgment, demonstrating that its validity and infringement claims were not baseless. Further, Plaintiff performed a thorough investigation of Defendants' products prior to filing the operative complaints above and beyond what is required by the Federal Circuit. Plaintiff obtained samples of the accused products, performed testing of the products, reviewed the patents and their file histories, analyzed the accused products and compared them to the asserted claims

and obtained expert opinions and consultations in support of continuing its pursuit of its claims. Even this Court complimented the parties on their conduct during this litigation. *See* Bogle Decl., ¶ 14; Woods Decl., ¶ 16, Ex. L. Notwithstanding Defendants' baseless accusations and mischaracterization of the facts, Plaintiff's conduct during this litigation does not warrant an award of fees.

### C. Defendants Have Failed to Demonstrate that the Amount of Requested Attorney's Fees Is Reasonable.

#### 1. Defendants Have Failed to Allocate Their Attorneys' Fees Allegedly Incurred Unnecessarily by Plaintiff's Conduct.

The supporting documentation for Defendants' Motion reveals that Defendants seek the entirety of their claimed attorneys' fees incurred in defending against the cases filed against them by Plaintiff. Assuming *arguendo* that this Court decides to rule in their favor, Defendants should not be entitled to any award because Defendants have failed to allocate their claimed fees to specific actions taken by Plaintiff or other events that "contributed unnecessarily" to their expenses in defending against Plaintiff's cases.[6] *Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975, at *4 (S.D.N.Y. June

[6] For example, Defendant Ultimate seeks a fee award of $336,784 based upon a total of 855.4 hours spent by attorneys and paralegals at Fox Rothschild LLP "[b]etween September 34, 2012 to July 1, 2014." *See* Dkt. No. 292-2 at ¶ 8. In other words, Ultimate seeks a fee award for *all* of the fees incurred in defending against Plaintiff's action, which is improper on its face.

Similarly, Defendant Vitacost seeks a fee award of $263,754.60, based upon $195,596.50 attributed to work performed by Espinosa & Trueba, PL law firm, (Dkt. No. 292-7 at ¶ 16), and $68,403.00 attributed to work performed by its local counsel, LaRiviere, Grubman & Payne, LLP, (Dkt. 292-8 at ¶ 3, Ex. A). Defendant Vitacost seeks a fee award dating back to September 2012 through July 2014. *See* Dkt. No. 292-7, Ex. B; Dkt. No. 292-8, Ex. A. In other words, Vitacost seeks a fee award for *all* of the fees incurred in defending against Plaintiff's action, which is facially improper.

The GNC Defendants, which are jointly represented by Venable LLP, seek a fee award of $18,393 based upon a total of 31.9 hours between June 1, 2013 through June 30, 2014. Dkt. No. 292-6 at ¶ 4, Ex. B. In other words, GNC seeks a fee award for *all* of the fees incurred in defending against Plaintiff's action, even though this Court issued a stay of the GNC action on September 19, 2013. *See* Dkt. No. 191. On July 31, 2014, this Court lifted the stay in the GNC action, and entered Final Judgment in the GNC action. *See* Woods Decl., ¶ 17, Ex. M. In other words, GNC could not have incurred any attorneys' fees in unnecessarily having to defend against Plaintiff's action on or after September 19, 2013. Based upon GNC's documentation, however, this Court has no ability to discern precisely what amount of fees were incurred by GNC before the stay was issued and afterward. At minimum, any fees incurred after the entry

Continued on the next page

30, 2014) (awarding attorneys' fees to a prevailing plaintiff under § 285 because "Defendants should be required to cover at least the portion of plaintiffs' attorneys' fees related to litigation tactics taken by defendants that have contributed unnecessarily to plaintiffs' expenses in defending its patent"). Given that none of the moving Defendants have allocated their respective time to any specific actions attributed to Plaintiff that they claim as contributing unnecessarily to their defense of their respective case, this Court has no means to award any attorneys' fees regarding any of the Defendants.

**2. <u>Defendants Concede That They Are Not Entitled to Recover Any Attorneys' Fees Incurred Prior to the Court's Issuance of Its Claim Construction Order on August 6, 2013.</u>**

Defendants have argued that this case is "exceptional" because "Tawnsaura ignored the Court's claim construction order." Motion at 14:5-6; *see also id.* at 6:8-25. In support, Vitacost's defense counsel has averred in his declaration that "Tawnsaura certainly had no reasonable basis for continuing this Case after the Court entered its Claim Construction Order." Dkt. No. 292-7 at ¶ 6. The Claim Construction Order was not issued by the Court until August 6, 2013. *See* Dkt. No. 177. Thus, even assuming that this Court decides to award attorneys' fees to Defendants under § 285, this Court should not be awarding *any* attorneys' fees incurred prior to August 6, 2013, based upon Defendants' own interpretation.

**3. <u>Defendants' Counsels' Hourly Rates Are Unsubstantiated as Reasonable.</u>**

Defendants' counsels' attempts to assert that the hourly rates charged by the attorneys in their respective law firms are reasonable based upon their own opinion and nobody else's, (Dkt. No. 292-2 at ¶ 7; Dkt. No. 292-7 at ¶ 14; Dkt. 292-6 at ¶ 7), lack

---

Continued from the previous page
of the stay on September 19, 2013 should not be awarded to GNC. In addition, given that GNC has failed to identify any specific conduct attributed to Plaintiff that contributed unnecessarily to GNC's defense of the patent case against it, GNC should be awarded *no* attorneys' fees regardless of whether it is the prevailing party or not.

foundation and should be rejected as inadequate. Otherwise, any attorney seeking an award of attorneys' fees could merely cite themselves to support their own fee request. *J.M. v. Capistrano Unified Sch. Dist.*, 2011 WL 1326905, at *5 (C.D. Cal. Mar. 31, 2011) (noting that the attorney seeking prevailing party attorneys' fees provided "virtually no guidance other than a threadbare assertion of entitlement" and rejecting the attorney's statement in her declaration addressing her customary hourly rate).

Additionally, Counsel for Vitacost, the law firm of LaRiviere, Grubman & Payne, LLP, does not even bother to identify its hourly rates charged by its attorneys or staff. *See* Dkt. No. 292-8 at ¶¶ 2-3, Ex. A. Thus, this Court has no means to evaluate the reasonableness of that law firm's hourly billing rates. This is yet an additional reason why Vitacost should not be awarded any attorney's fees with respect to the law firm of LaRiviere, Grubman & Payne, LLP.

#### 4. Ultimate Nutrition's Fee Award, If Any, Should Be Reduced Because Of Its Unethical Conduct.

As set forth above, Ultimate has violated the Rules of Professional Conduct. "In fixing the rate, ethical violations are unquestionably relevant since unethical conduct or conflicts of interest will, in many cases, lessen the value of services." *In re Coastal Equities, Inc.*, 39 B.R. 304, 312 (Bankr. S.D. Cal. 1984). Thus, Plaintiff submits that Ultimate's fee award, if any, should be substantially reduced in light of defense counsel's unethical conduct.

## III. CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court deny Defendants' Motion and grant such further and other relief as it deems appropriate.

Dated: August 12, 2014

NEWPORT TRIAL GROUP

By: */s/Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff
THE TAWNSAURA GROUP, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2014, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DECLARE THIS CASE AS EXCEPTIONAL AND TO AWARD ATTORNEYS' FEES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/Scott J. Ferrell
Scott J. Ferrell